UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00087-RJC

| MEGAN WILSON, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**THIS MATTER** is before the Court on the Parties' Cross Motions for Summary Judgment. (Doc. Nos. 9, 13). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is proper and affirms the decision. Accordingly, the Court grants Defendant's Motion for Summary Judgment (Doc. No. 13).

## I. BACKGROUND

Plaintiff Megan Wilson ("Wilson") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claims. Wilson filed applications for supplemental security income and for disability insurance benefits on October 18 and 20, 2017, respectively. (Tr. [1] 31). In both applications, the alleged disability onset date was April 1, 2016. (*Id.* at 121-22, 134-35).

Wilson's history of administrative remedies is complicated: in July 2019, the ALJ concluded Wilson could perform jobs that exist in significant numbers in the national economy

---

[1] Citations to "Tr." throughout the order refer to the administrative record located at Doc. No. 8.

1

and denied her claims. (*Id.* at 212). Wilson appealed that decision, it was remanded, and another hearing followed. (*Id.* at 242). Wilson again received an adverse decision, again appealed, and the decision was again remanded – this time, because the ALJ gave "no assessment of persuasiveness regarding the opinions provided for the claimant's functional limitations in accordance with 20 CFR 404.1520c and 416.920c." (*Id.* at 253). In August 2021, the ALJ held another hearing, evaluated the evidence, and denied Wilson's claims for a third time. (*Id.* at 30-31).

In denying Wilson's social security claim, the ALJ conducted a five-step sequential evaluation. (*Id.* at 12-41). At step one, the ALJ found that Wilson had not engaged in substantial gainful activity since the alleged onset date. (*Id*. at 17). At step two, the ALJ found that Wilson suffered from a combination of major depressive disorder and panic disorder, both of which are severe impairments, (*Id*. at 18), and the ALJ also found Wilson had a non-severe impairment. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id*. at 18-19). Before moving to step four, the ALJ found that Wilson had the following residual functional capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: able to maintain concentration for two hour intervals to perform reasoning level 2 work as described by the Dictionary of Occupational Titles (DOT), wherein she would be able to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; deal with problems involving a few concrete variables from standardized situations; no requirement to interact with the general public in order to perform work duties; no tandem work required to perform work duties.

(*Id*. at 20). At step four, the ALJ found that Wilson was unable to perform any past relevant work and found at step five that Wilson could perform jobs that exist in significant numbers in the national economy. (*Id*. at 29-31).

After exhausting her administrative remedies, Wilson brought this action for review of the Commissioner's decision denying her applications for disability benefits. (Doc. No. 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is

3

Case 3:22-cv-00087-RJC   Document 17   Filed 03/30/23   Page 3 of 10

"substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Alexander argues remand is warranted for two reasons: (1) the ALJ failed to properly evaluate evidence of Wilson's limitations in the workplace; and (2) the Social Security Administration's structure was unconstitutional. Wilson fails on both arguments – first, because the ALJ properly evaluated all evidence before her, and second, because the ALJ's appointment was constitutionally proper under the Federal Vacancies Reform Act's spring-back provision.

**1. The ALJ Properly Evaluated Evidence of Wilson's Limitations**

"The determination of eligibility for social security benefits involves a five-step inquiry." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). "The five step inquiry asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of [one of certain listed] impairments ...; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work." *Id.* at 653 n.1; 20 C.F.R. § 404.1520. Before the fourth step, the ALJ determines the claimant's RFC, which is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). "The ALJ must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "In doing so, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion," including a

4

"discussion of which evidence the ALJ found credible and why, and specific application of pertinent legal requirements to the record evidence." (internal quotation marks and citations omitted). *Monroe*, 826 F.3d at 188-89.

Wilson first takes issue with how the ALJ evaluated the persuasiveness of several medical providers' opinions: Dr. Wysong, one of Wilson's treating physicians, Kate Slotwinski, one of Wilson's treating nurse practitioners, and Dr. Melosh, an independent psychologist. As required by the Fourth Circuit, however, the ALJ discussed what evidence she found credible and why, and she properly applied the correct legal requirements to evidence in the record. *See Monroe*, 826 F.3d at 188-89. Her evaluation of these opinions, therefore, was proper.

Dr. Wysong concluded in March 2018 that Wilson's anxiety and mood disorder prevented her from working. (Tr. at 28). In evaluating Dr. Wysong's opinion, however, the ALJ noted that she found the opinions "not persuasive" because they contradicted Wilson's presentation during exams and in daily activity. (*Id.*). Specifically, the ALJ observed that though Dr. Wysong found Wilson was unable to work due to her anxiety and mood disorder, "there were many examinations where Dr. Wysong objectively observed the claimant with a normal mood and affect, normal behavior, and normal judgment and thought content," and that "observations of normal mood and affect suggest better relief than [Dr. Wysong] opined." (*Id.*). As to Dr. Wysong's other opinions (offered in April 2018 and July 2019), the ALJ provided similar narrative discussions; for each, the ALJ explained that she found Dr. Wysong's conclusions unpersuasive because his restrictions were temporary and because they were inconsistent with his other findings. (*Id.*).

In so explaining each of her decisions, the ALJ used 20 C.F.R. 404.1520c's most important factors – supportability and consistency – to evaluate Dr. Wysong's opinions. Specifically, the ALJ noted that the objective evidence Dr. Wysong based his opinions on (Wilson's presentation

during exams) did not support his conclusions, (*id.*), and that Dr. Wysong's conclusions were inconsistent with each other and with "the medical evidence overall." (*Id.*). Ultimately, the ALJ's evaluation was proper: she discussed what evidence she found credible and why, and she offered a specific narrative on why she found certain evidence unpersuasive.[2]

The ALJ's evaluation of Kate Slotwinski was similarly suitable. Slotwinski offered a flurry of percentages to assess Wilson's workplace aptitude: she could follow work rules and understand new instructions 90% of the time, learn new information 80% of the time, and meet attendance standards and remember somewhat detailed instructions 75% of the time. (*Id.* at 29). The ALJ concluded that Slotwinski's opinion was unpersuasive, "as the objective medical evidence does not support such limitations." (*Id.*). The ALJ expanded on her findings: "Despite documented noncompliance with medication as reported by the claimant, the claimant indicated she has been able to manage her anxiety well," "[Slotwinski's records] reflect the provider only assessed suicidal and homicidal ideations," and "treatment notes reflect normal mental status exams and … further indicated … [Wilson] reports anxiety but that her coping skills 'usually work well.'" (*Id.*). Because the ALJ points to relevant evidence in making her conclusions, these reflections are a proper evaluation of Slotwinski's opinion. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020) ("Substantial evidence … means —and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

The ALJ's evaluation of Dr. Melosh was also adequate. Dr. Melosh noted that Wilson had some difficulty with completing tasks, that she completed those tasks slower than average, and

---

[2] Wilson's request (Doc. No. 16) to apply *Shelley C v. Comm'r of SSA*, 61 F.4th 341 (4th Cir. 2023) is misplaced – as noted in *Shelley*, "All claims filed after March 27, 2017, are subject to 20 C.F.R. § 404.1520," and not to 20 C.F.R. § 404.1527. *Id.* at n.6. Because Wilson's claims were filed in October 2017, the Court applies 20 C.F.R. § 404.1520 to evaluate opinion evidence.

that she would need additional time to complete similar tasks in a workplace. (Tr. at 28). The ALJ found these opinions partially persuasive, as the opinions were generally in line with the objective evidence. Because Dr. Melosh's opinion was based on a one-time evaluation, however, and was largely based on Wilson's subjective reports of how she preferred to work, the ALJ did not afford Dr. Melosh's opinion full weight. (*Id.* at 29). This narrative discussion was again sufficient – as required, the ALJ discussed what evidence she found credible and why, and she supported her conclusions with evidence from the record.

In addition to arguments on the opinions of medical providers, Wilson offers two more evidence-based objections: first, that the ALJ improperly evaluated Wilson's own statements, and second, that the ALJ improperly weighed a disability decision from the North Carolina Department of Health and Human Services (NCDHHS). Both of these arguments fail. As to Wilson's own opinion of her symptoms, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." (*Id.* at 21). The ALJ then engaged in a lengthy comparison of Wilson's reports to the objective evidence and to other testimony by Wilson and found that Wilson's reports were largely inconsistent with both. (*Id.* at 22 ("[Wilson's] treating practitioners usually showed that the claimant's mental status was normal at appointments"); *id.* ("[J]ust one month after her alleged onset date, treating physicians concluded the claimant's symptoms were effectively controlled with medication when administered"); *id.* ("[Wilson] presented as bright and upbeat during the appointment and her therapist indicate[d] her therapy was going very well"); *id.* ("Although the claimant complains of decreased attention and focus, she maintained adequate attention, concentration, persistence, and pace throughout her hearing and application process")). Thus, the

7

ALJ's opinion is supported by substantial evidence and the ALJ properly explained how she arrived at that decision.

Finally, the ALJ afforded the proper weight to the NCDHHS disability decision. In cases filed after March 17, 2017, "decisions by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Social Security Act." *Rogers v. Kijakazi*, --- F.4th ---, No. 22-1264, 2023 WL 2564349, at *4 (4th Cir. Mar. 20, 2023) (citing 20 C.F.R. § 404.1520b(c)(1)). This new rule, overturning years of contrary precedent, *see, e.g.*, *Woods v. Berryhill*, 888 F.3d 686, 692 (4th Cir. 2018), now binds this Court. Thus, the ALJ was under no mandate to afford Wilson's NCDHHS decision any specific weight, or even to address the decision. *Rogers*, 2023 WL 2564349, at *4 ("[T]he SSA 'will not provide any analysis about how we considered [decisions by other governmental agencies and nongovernmental entities] in our determination or decision.'") (citing 20 C.F.R. § 404.1520b(c)). The ALJ therefore applied the correct legal standard, and substantial evidence supports her decision.

**2. The ALJ's Appointment was Constitutional**

Wilson also argues that the ALJ's appointment violated the Appointments Clause. (Doc. No. 10, at 19). She bases this constitutional argument on a subsidiary statutory one: that Nancy Berryhill, the person who ratified the ALJ's appointment, was not authorized by the Federal Vacancies Reform Act ("FVRA") to serve as the Acting Commissioner of the Social Security Administration at the time of the ratification. *Id.* Specifically, she claims that under the FVRA Berryhill had only 210 days beginning on the date the vacancy occurred to serve as the Acting Commissioner, and since her ratification of the ALJ's appointment occurred after 210 days had passed, the ratification was invalid and thus unconstitutional. *Id.* (citing 5 U.S.C. § 3346(a)).

The FVRA, however "incorporates a spring-back provision, which permits the acting officer to begin performing the functions and duties of the vacant office again upon the submissions of a nomination, even if the 210-day period expired before that nomination was submitted." *Chuenanan v. Comm'r of Soc. Sec.*, No. 1:21-CV-00086-RJC, 2022 WL 1416421, at *2 (W.D.N.C. May 4, 2022). Here, Acting Director Berryhill ratified the appointment of the ALJ in this case on July 16, 2018, after President Trump nominated Mr. Saul for the position. As explained in other cases before this Court, "this triggered the spring-back provision, and Acting Director Berryhill was properly serving at the time she ratified the ALJ's appointment." *Edwards v. Comm'r of Soc. Sec.*, No. 1:21-CV-00134-RJC, 2022 WL 3352298, at *4 (W.D.N.C. Aug. 12, 2022).

A host of other courts agree: the FVRA allows "the person serving as an acting officer" to "serve in the office" during "the period" that a "first or second nomination for the office" is "pending in the Senate." 5 U.S.C. § 3346(a)(2); *see Williams v. Kijakazi*, 2022 WL 2163008, at *3 & n.3 (W.D.N.C. June 15, 2022) (collecting cases); *Snyder v. Kijakazi*, 2022 WL 4464847, at *18–21 (N.D. Iowa Sept. 26, 2022) (same). That is true even if, as here, the person stopped serving in the office after the expiration of subsection (a)(1)'s 210 days and then resumed serving under subsection (a)(2) once a nomination was submitted to the Senate. *Dahle v. Kijakazi*, --- F.4th ---, 2023 WL 2379383, at *3 (8th Cir. 2023); *see also id.* (explaining that the phrase "the person serving," as used in § 3346(a), references the person "qualified to be serving under § 3345," not the person "'presently' serving under § 3346(a)(1)"). The ALJ's appointment was, therefore, constitutional.

9

Case 3:22-cv-00087-RJC    Document 17    Filed 03/30/23    Page 9 of 10

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Wilson's Motion for Summary Judgment (Doc. No. 9) is **DENIED**.

2. The Commissioner's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**.

3. The Commissioner's decision to deny Wilson Social Security benefits is **AFFIRMED**.

**SO ORDERED.**

Signed: March 29, 2023

Robert J. Conrad, Jr.
United States District Judge